513 A.2d 995

**COMMONWEALTH of Pennsylvania**

v.

**Michael UPCHURCH, Appellant.**

Superior Court of Pennsylvania.

Submitted May 8, 1986.

Filed Aug. 7, 1986.

Martin W. Bashoff, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WIEAND, OLSZEWSKI and BECK, JJ.

OLSZEWSKI, Judge:

The appellant, the first of three, appeals the result of sentencing from the crimes of criminal conspiracy, possessing an instrument of crime, robbery and murder, second degree, for which he was found guilty by a jury. This appeal raises numerous issues, which, after a careful review, we reject. All appellant's allegations, however, will be addressed seriatim.

The facts, as taken from the trial court, reveal the following. On Saturday, July 9, 1983, at approximately 2:00 a.m., seventeen-year-old Thomas Murphy was shot while riding his ten-speed bicycle in the 7200 block of Woodland Avenue in West Philadelphia. In an effort to avoid his attackers, Murphy continued to pedal his bike crossing the city line into Darby, Delaware County. At a distance of approximately 900 feet from the point of attack, Murphy crashed into a parked car and collapsed to the ground. Cynthia Leonard observed the victim as he rode past her apartment building on Main Street in Darby. Leonard ran over to Murphy when he crashed into the car and observed two bullet holes in his body. Leonard also heard Murphy state, "A Nigger shot me." (N.T. 306, 1–10–84).

Murphy was rushed to Fitzgerald Mercy Hospital where he was pronounced dead approximately three hours after the attack. An autopsy performed by the Delaware County Medical Examiner, Dr. Dimitri Contostavlos, on July 9, 1983, revealed the cause of death to be loss of blood due to two gunshot wounds to the trunk. The manner of death was ruled a homicide.

At trial, the Commonwealth's evidence established that at approximately 2:00 a.m. on July 9, 1983, Thomas Murphy left the house of his girlfriend, Colleen Doogan, located in the 6100 block of Wheeler Street, and began to pedal home on his bicycle. (N.T. 302–303, 1–10–84). At approximately the same time, the defendants Joseph Council, Michael Upchurch and Michael Johnson, along with one Mary Alice Smith, were exiting the Birthday Bar located at 7250 Woodland Avenue. (N.T. 231–233, 1–10–84). Upon observing

Murphy on the bicycle, defendant Council stated, "Here comes a white boy. Let's get him." (N.T. 205, 337, 1–10–84). Shortly after these words were uttered, defendant Upchurch pulled out a revolver and fired two shots at Murphy, striking him in the chest and in the back. (N.T. 425, 1–11–84). As the victim continued to ride away, all three defendants, as well as Mary Alice Smith, fled the scene.

Acting on information supplied by Smith, the police obtained arrest warrants for the defendants. Michael Johnson and Joseph Council were arrested on July 22, 1983. Michael Upchurch was apprehended on the following day, July 23, 1983.

Defendant Upchurch was charged under September Term, 1983: no. 634 criminal conspiracy; no. 635 possession of an instrument of crime, generally; no. 636 robbery; no. 637 involuntary manslaughter; and no. 638 murder, voluntary manslaughter. The bills charging involuntary manslaughter were subsequently nolle prossed as to all three defendants.

On January 4, 1984, the defendants' motion to suppress an arrest and oral and written statements were heard with the Hon. Albert F. Sabo presiding. On that same date, the defendants' motions were denied.

On January 9, 1984, upon being arraigned, defendants pleaded not guilty as to all bills. The jury, having been duly impanelled, was sworn and/or affirmed and the trial proceeded before the Hon. Albert F. Sabo. As to defendant Upchurch, the jury returned a verdict of guilty, murder in the second degree; guilty, robbery; guilty, criminal conspiracy; and guilty, possession of an instrument of crime. Sentencing was deferred pending the disposition of post-trial motions. Presentence investigations and psychiatric evaluations were ordered. Defendant Upchurch was sentenced on bill no. 638 to life imprisonment at the State Correctional Institution at Graterford; on bill no. 634 to not less than five nor more than ten years to run consecutive to

bill no. 638; on bill no. 635 to not less than two and one-half nor more than five years to run consecutive to bill no. 634; and bill no. 636 merged with bill no. 638 for sentencing purposes. Upchurch was also assessed $15.00 towards the Victim's Compensation Fund.

## I.

Appellant's first issue deals with the court's denial of his motion to suppress his confession. He alleges that during questioning, he was interviewed by two different police personnel, Detective Dougherty at first and then Officer Riley. He was advised of his *Miranda* rights by Detective Dougherty (N.T. 198–199). Appellant contends now that he should also have been mirandized before speaking with Officer Riley, to whom he gave the statement he wants suppressed. We disagree.

The appellant correctly sets out the criteria to be evaluated in reviewing this issue as: (1) the time lapse between the last *Miranda* warnings and the appellant's statement; (2) interruptions in the continuity of the interrogation; (3) whether there was a change of location between the place where the last *Miranda* warnings were given and the place where the appellant's statement was made; (4) whether the same officer who gave the warnings also conducted the interrogation resulting in the appellant's statement; and (5) whether the statement elicited during the complained-of interrogation differed significantly from other statements which had been preceded by *Miranda* warnings. *Commonwealth v. Ferguson*, 444 Pa. 478, 282 A.2d 378 (1971).

The time difference here was four and one-half hours and the move was between rooms of the same building. The detective was initially present when Officer Riley took over so there was a minimal break of continuity. In addi-

tion, the second statement did not differ significantly from other statements but rather differed in degree of culpability. We therefore decline to find reversible error.[1]

## II.

■ Next, appellant argues that a mistrial should have been declared after a Commonwealth witness testified about a polygraph test.[2]

In *Commonwealth v. Camm*, 443 Pa. 253, 277 A.2d 325 (1971), the Pennsylvania Supreme Court held that any reference to a polygraph examination which raises an inference concerning either guilt or innocence of an accused is inadmissible. As such, our Courts have been reluctant to permit any reference to the polygraph to be made before the finder of fact, *Commonwealth v. Miller*, 497 Pa. 257, 439 A.2d 1167 (1982); *Commonwealth v. Cunningham*, 471 Pa. 577, 370 A.2d 1172 (1977), and will not allow a conviction to stand. *See Commonwealth v. Johnson*, 441 Pa. 237, 272 A.2d 467 (1971).

The comment by Officer Riley cannot be found prejudicial. It was not prompted by the question and was elicited in testimony regarding appellant's interview and not testimony concerning guilt or innocence. No results were indicated and it is not even clear that the test was given, merely that Officer Riley used a form also used by the Polygraph Unit. Given the form of the question and the attempt by the officer to rephrase her answer along with having it stricken by the court, we find no prejudice.

1. We take interest in the fact that appellant signed a consent form before speaking with Officer Riley informing him of his rights.

2. The complained about referenced was in a response by Office Diane Riley by Commonwealth attorney King:
Q. Before interviewing Mr. Upchurch, what if anything did you do to assure yourself that he had been given his constitutional warnings?
A. I have a—
The Polygraph Unit has a form that has to be filled out by the sub—Excuse me, the Unit has to have a form that's been—(N.T. 418–419, 1–11–84).

## III.

■ The third issue alleges trial court error in not permitting defense counsel to question a Commonwealth witness as to his past juvenile record. The objective of this cross-examination was to impeach the witness' credibility.

Our Courts have consistently held that a witness in a criminal trial may not be impeached by use of a prior adjudication of delinquency. *Commonwealth v. Katchmer*, 453 Pa. 461, 309 A.2d 591 (1973); *Commonwealth v. Dombrauskas*, 274 Pa.Super. 452, 418 A.2d 493 (1980); *Commonwealth v. Pilosky*, 239 Pa.Super. 233, 362 A.2d 253 (1976). We will not deviate from this rule now.[3]

## IV.

Appellant's next issue dealing with the competency of Commonwealth witness Stanley Hackney is in two parts; first, the court's determination that appellant was competent to testify and second, whether the Commonwealth was properly allowed to lead the witness.

■ The Court in *Commonwealth v. Goldblum*, 498 Pa. 455, 447 A.2d 234 (1982) sets out the law in the area of competency:

A determination of testimonial competency rests in the sound discretion of the lower court. *Commonwealth v. Ware*, 459 Pa. 334, 356, 329 A.2d 258, 269 (1974). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will as shown by the evidence or the record, discretion is abused." *Commonwealth v. Moyer*, 497 Pa. 643, at 647, 444 A.2d 101, at 103 (1982). The burden of proving incompetency rests on the party opposing the witness, *Commonwealth v. Ware, supra.*

3. Appellant argues that he has a right to cross-examine and impeach Commonwealth witnesses. Our decision does not hamper that objective. The witness here had an adult record and charges pending that were brought out and open for impeachment.

In order to be testimonially competent, a witness must have the ability to (1) perceive the event with a substantial degree of accuracy, (2) remember it, (3) communicate about it intelligibly, and (4) be mindful of his duty to tell the truth under oath.

A review reveals that the court examined Hackney's preliminary hearing testimony and medical reports. In addition, the court conducted an *in camera* colloquy in which it was determined that the witness knew the difference between right and wrong and the importance of telling the truth. (N.T. 316–324, 329). There was no abuse of discretion in allowing Hackney to testify.

With respect to the second part, the use of leading questions lies within the sound discretion of the trial court and a court's tolerance or intolerance of the leading questions will not be reversed absent an abuse of discretion. *Commonwealth v. Bell,* 328 Pa.Super. 35, 476 A.2d 439 (1984); *Commonwealth v. Reidenbaugh,* 282 Pa.Super. 300, 422 A.2d 1126 (1980).

In the present situation, the use of leading questions was discussed at side bar after a defense counsel objection. The court stated its reasons for allowing the questions and warned the prosecutor to stay within proper bounds and not to suggest an answer. (N.T. 355). Again, we cannot find an abuse of discretion to warrant appellant's desired relief.

## V.

Appellant's next issue also concerns testimony of Hackney. This issue contends that the lower court erred in allowing testimony that Hackney had never before testified in proceedings concerning this matter to stand uncorrected.

The record discloses that two police officers testified that Hackney appeared at the preliminary hearing. (N.T. 480, 716–718). In addition, defense counsel had the opportunity to impeach Hackney on this point by cross-examination and through the use of the preliminary hearing transcript. The jury, therefore, was aware of Hackney's previous court

appearance. As such, appellant's argument must be deemed meritless.

## VI.

Our discussion now turns to pre-trial discovery. Appellant asserts that he should have received criminal extracts of all witnesses, ballistics reports, medical examiners' reports, statements made by the Hackney brothers and the information that the victim's shirt had been destroyed.

It is undisputed that the purpose of discovery is to insure a fair trial to all parties. The United States Supreme Court case of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), set the gears in motion for defense rights to state information. *Brady* mandated that certain evidence in the hands of prosecutors be given to the accused. Specifically, a prosecutor must not suppress evidence favorable to the accused when the evidence is material to guilt or punishment. *Brady* 373 U.S. at 87, 83 S.Ct. at 1197. Since this decision, courts have struggled to comply with and interpret *Brady.*[4] In our review, we must keep in mind that questions involving pre-trial discovery in criminal cases lie generally within the discretion of the trial judge and his actions will not be reversed unless such discretion was abused. *Commonwealth v. Gockley,* 411 Pa. 437, 192 A.2d 693 (1963).

■ We quickly dispose of the controversy surrounding the destroyed shirt. The Commonwealth states, and the trial court agreed, that the first time *anyone* knew anything about the shirt being destroyed was at trial. Since this information was not in the hands of the prosecutor, it could not be turned over to the defense.

■ A review of the record reveals that defense counsel was given a copy of the ballistics report during trial but in

---

4. *See e.g., Giles v. Maryland,* 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); *United States v. Ahmad,* 53 F.R.D. 186 (M.D.Pa.1971); *Commonwealth v. Barnes,* 463 Pa. 259, 344 A.2d 821 (1975); *Commonwealth v. Royster,* 472 Pa. 581, 372 A.2d 1194 (1977).

advance of the expert testimony.[5] (N.T. 183–189). We do not know of any prejudice as a result of this late filing and none is alleged by appellant. Appellant's claim, therefore, must be denied.

■ With regard to the discovery of statements by the Hackney brothers, the lower court determined that some of the interviews were not reduced to writing and therefore were not discoverable. Those statements that were put in writing were in reference to another crime and not to their testimony; hence, they were not discoverable.

It is the decision of this Court that there were no pre-trial discovery violations and all of appellant's arguments are meritless.

## VII.

We now address appellant's contentions relating to prosecutorial misconduct. This issue can be broken down into four subparts, each to be disposed of independently.

### A.

■ First, it is argued that the prosecutor's closing argument was improper by using terms such as "executioner" and making reference to "unsafe streets."

Initially, we note that the Commonwealth is allowed reasonable latitude in fairly presenting its version of the case to the jury. *Commonwealth v. Cronin,* 464 Pa. 138, 346 A.2d 59 (1975). The court in *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873, further clarified this area in declaring:

> But even where the language of the district attorney is intemperate, uncalled for and improper, a new trial is not necessarily required. *Commonwealth v. Crittenton,* 326 Pa. 25, 31, 191 A. 358 (1937); *Commonwealth v. McHugh,* 187 Pa.Super. 568, 577, 145 A.2d 896 (1958).

---

**5.** There was some mention by the prosecutor at the time of disclosure that he had received the report that morning. Whether it was the copies he received or whether he had access to the report previously is unclear.

The language must be such that its "unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Simon*, 432 Pa. 386, 394, 248 A.2d 289, 292 (1968). *See also Commonwealth v. Myers [Meyers]*, 290 Pa. 573, 139 A. 374 (1927). The effect of such remarks depends upon the atmosphere of the trial, *Commonwealth v. Dickerson*, 406 Pa. 102, 110, 176 A.2d 421 (1962); *Commonwealth v. Del Giorno*, 303 Pa. 509, 519, 154 A. 786 (1931), and the proper action to be taken is within the discretion of the trial court. *Commonwealth v. Silvis*, 445 Pa. 235, 237, 284 A.2d 740 (1971); *Commonwealth v. Simon, supra.*

While we agree with the lower court that the comments made by the prosecutor were borderline improper, we do not agree with the appellant that they were so prejudicial as to make it impossible for the jury to render a true verdict.

## B.

Second, it is argued that the prosecutor should not have elicited testimony concerning alleged threats against Hackney and should not have misled the court to believe no deal had been struck with Hackney. We fail to see how appellant was harmed or prejudiced in any way. The only promise made to Hackney was a statement by the prosecutor at Hackney's sentencing that he did testify in the present case. This is not sufficient to infer that his testimony was forced or induced. *See Commonwealth v. Bulovas*, 301 Pa.Super. 55, 446 A.2d 1332 (1982).

## C.

Third, appellant contends the prosecutor introduced evidence concerning an unrelated weapon. Again, appellant does not allege any prejudice and harm. The jury was immediately told to disregard this testimony and all other references to a weapon were limited to the murder weapon—a .22 caliber.

## D.

■ Lastly, the appellant advances the argument that the prosecutor misled the court regarding the granting of immunity for Mary Alice Smith, an eyewitness. At the preliminary hearing of August 10, 1983, Smith appeared. Shortly after she admitted her presence at the Birthday Bar at the time of the crime, the court stopped the hearing to appoint counsel for her. With the aid of counsel, Smith invoked the fifth amendment. The prosecutor then announced that he would "seek immunity" for her (N.T. 8–10–83, 33, 34, 38). The prosecutor drew up an immunity petition, which was signed by the Honorable Edwin S. Malmed. On August 30, the second listing of the preliminary hearing, the prosecutor, carrying the petition, met Smith and her attorney. He told them that if Smith testified according to her pre-trial statement, she would enjoy full immunity. Conversely, if she gave false testimony, he would withdraw the immunity offer. Smith would not agree to testify "in conformity with the statement." Accordingly, to prevent extending a judicial sanction to testimony which he believed would be perjury, the prosecutor withdrew the immunity. (N.T. 679–681).

Appellant argues this coerced Smith into silence. We do not agree. As stated in *Commonwealth v. Sklar*, 497 Pa. 404, 441 A.2d 1201 (1982):

When an attempted abuse of the immunity grant becomes apparent, it is only proper that the granting official revoke the immunity. Therefore, the United States Attorney acted properly in this case when he declared that he would not be bound by the original offer of immunity....

The prosecutor's actions, therefore, were within bounds.

## VIII.

■ Our next inquiry is whether the appellant voluntarily signed his confession. This was not delved into at trial because the lower court ruled that it was a matter which should have been raised during the suppression hearing.

Appellant's sole argument is that since appellant suffered from hardening of the arteries, his will to resist may have been impaired. We affirm the lower court's decision that this issue was waived. *See, Commonwealth v. DeLeon,* 276 Pa.Super. 76, 419 A.2d 82 (1980).

## IX.

■ Appellant avers that the lower court improperly removed from the jury's consideration the possibility of returning a voluntary manslaughter verdict by stating: "(I)n my opinion, under the facts and circumstances of this case, voluntary manslaughter would not be an appropriate verdict." (N.T. 875). Most importantly, however, was the judge's instructions that voluntary manslaughter *was* an allowable verdict (N.T. 859) and that the jury was free to ignore the court's opinion (N.T. 875). This conforms to our criteria in *Commonwealth v. Cole,* 274 Pa.Super. 106, 417 A.2d 1276 (1979):

> When a defendant charged with murder requests a charge on voluntary manslaughter, the trial court may give its opinion on whether the facts show that the defendant committed voluntary manslaughter if the evidence supports the court's opinion, the court fully informs the jury of its power to return a verdict of guilty of voluntary manslaughter, regardless of whether the facts support that verdict, and if the court instructs that the jury is the finder of facts and is not bound to follow the court's opinion. *Commonwealth v. Scaramuzzino,* 485 Pa. 513, 403 A.2d 82 (1979) (plurality opinion) (citing cases).

## X.

The appellant's dispute with the voir dire is two-fold. First, he asks us to find error in the court's denial of a defense challenge for cause of Juror 77, Leonard Kaminski, and second, the denial of defense counsel's right to examine Juror 67, Dorothy Heebner, before granting the prosecutor's challenge for cause.

In a voir dire determination, it is important to consider the answers as well as the demeanor of potential jurors as observed by the trial judge. As such, reversal is appropriate only in circumstances of apparent error. *See Commonwealth v. Johnson,* 299 Pa.Super. 172, 445 A.2d 509 (1982). The *Johnson* Court also stated when a potential juror should be excused for cause:

A prospective juror should be excused for cause in two situations:

The first is where the prospective juror indicates by his answers that he will not be an impartial juror. . . . The second is where, irrespective of the answers given on voir dire, the court should presume the likelihood of prejudice on the part of the prospective juror because the juror has such a close relationship, be it familial, financial, or situational, with any of the parties, counsel, victims or witnesses. *Commonwealth v. Stamm,* 286 Pa.Superior Ct. 409, 429 A.2d 4, 7 (1981), *quoting Commonwealth v. Colon,* 223 Pa.Superior Ct. 202, 299 A.2d 326 (1972).

■ Juror No. 77, Leonard Kaminski, was extensively questioned on voir dire (N.T. 3.43–3.51). During that time he stated that although he had read about the crime, he could not remember all the facts and knew he could be fair and impartial. (N.T. 3.47). Furthermore, he positively stated that he could presume the three men innocent. Mr. Kaminski, therefore, does not fall with the first situation in which a juror should be excused for cause.[6] The court, then, did not abuse its discretion.

■ Similarly, we find no palpable abuse of discretion with respect to Juror 67, Dorothy Heebner. It is within the discretion of the trial court what questions will be asked, *Commonwealth v. Hamm,* 325 Pa.Super. 401, 473 A.2d 128 (1984) or if any questions will be asked by counsel. *See* Pa.R.Crim.P. 1106(d). Since the trial court had already made up its mind as to prejudice and the challenge for

6. Neither does he fall within the second situation. There is no allegation of a prejudice because of a close relationship of any kind.

cause, we would not require him to allow additional questions.

## XI.

The final issue challenges the sufficiency of the evidence of the conviction on the robbery charge. The test for evaluating the sufficiency of the evidence in a criminal case is whether, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner and drawing all reasonable inferences therefrom upon which the jury could properly have based its verdict, there is sufficient evidence to enable the trier of fact to find beyond a reasonable doubt every element of the crime of which the appellant has been convicted. *Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980); *Commonwealth v. Perkins*, 473 Pa. 116, 373 A.2d 1076 (1977); *Commonwealth v. Thomas*, 465 Pa. 442, 350 A.2d 847 (1976); *Commonwealth v. Loar*, 264 Pa.Super. 398, 399 A.2d 1110 (1979).

We find that this allows the conviction for robbery to stand. Appellant satisfied the elements of robbery as set out in 18 Pa.C.S.A. Sec. 3701(a)(1), (2) when he shot the victim in an attempt to take his bike. Therefore, appellant's argument is meritless. Judgment of sentence affirmed.

WIEAND, J., concurs in the result.