550 A.2d 570

**COMMONWEALTH of Pennsylvania**

v.

**Angelo Manuel DeBOOTH, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 29, 1988.

Filed Nov. 15, 1988.

524

Charles D. Younger, Assistant Public Defender, Boyer-town, for appellant.

Charles M. Guthrie, Jr., Assistant District Attorney, Reading, for Com., appellee.

Before OLSZEWSKI, KELLY and HESTER, JJ.

OLSZEWSKI, Judge:

This is an appeal from a judgment of sentence after appellant was found guilty of murder in the third degree, aggravated and simple assault, indecent assault, corruption of minors, and rape. Appellant alleges that the trial court committed numerous errors and that there was insufficient evidence to prove him guilty beyond a reasonable doubt.[1]

1. Appellant argues the following issues:

A. Did the lower court err by not suppressing certain statements by the appellant in violation of prearraignment delay?

B. Did the lower court err by not suppressing certain statements by the appellant and finding said statements knowingly and voluntarily given?

C. Did the lower court err in granting the Commonwealth's petition to extend under Pa. Rules of Criminal Procedure 1100 even though said petition was not signed?

D. Did the lower court err in granting the Commonwealth's petition to extend time under Pa. Rules of Criminal Procedure 1100, and finding judicial unavailability and due diligence by the Commonwealth to bring the Appellant to trial?

E. Did the lower court err in allowing testimony regarding the victim's statements about sexual matters by three Commonwealth witnesses?

F. Did the lower court err in allowing identification testimony by S. Fryberger outside an offer of proof?

G. Did the lower court err in not granting a mistrial when identification testimony by S. Fryberger occurred and said identification was not made known to appellant prior to trial?

H. Did the lower court err in admitting testimony by T. Maniaci when said witness did not recall the date in question regarding his testimony?

I. Did the lower court err in not allowing testimony by Susan Shelly to show that coroner Feeney issued a statement to the newspaper that was based on a doctor's opinion and conflicted with that opinion as to the time of death?

J. Did the lower court err in allowing testimony by D. Motika as to expert opinion of the trace of alcohol in the victim's stomach?

K. Did the lower court err in allowing testimony by Sgt. Matz of a fingerprint comparison which results were not given to appellant prior to trial?

L. Did the lower court err by requesting appellant to stand for a comparison to an unknown individual during testimony of a defense?

We find no merit in appellant's contentions and affirm the judgment of sentence.

On August 2, 1986, the body of sixteen-year-old Betty Jean "Cookie" Hollis was discovered in Schlegel Park located in Reading, Berks County, Pennsylvania. An autopsy revealed that Ms. Hollis had been sexually assaulted prior to being strangled to death. An investigation led to the eventual arrest of appellant, who was subsequently charged with criminal homicide, manslaughter, aggravated and simple assault, corruption of minors, rape and other related offenses.

On April 1, 1987, appellant was tried before a jury and found guilty of murder in the third degree, aggravated and simple assault, corruption of minors and rape. Post-verdict motions were denied and appellant was sentenced to combined terms of imprisonment totalling twenty-two and one-half to forty-five years.[2] Timely motions to reconsider the sentences were filed and denied. Appellant then filed the instant appeal.

Appellant initially contends that inculpatory statements he made to the police should have been suppressed. Two arguments are advanced: first, the statements obtained were the result of unnecessary pre-arraignment delay; and second, the statements were not knowingly or voluntarily given. We disagree.

In an appeal from an order granting or denying a motion to suppress, the role of the appellate court is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal

> M. Was the evidence insufficient to show beyond a reasonable doubt that appellant forcibly had vaginal sexual intercourse with the victim?
> N. Was the evidence insufficient to show beyond a reasonable doubt that appellant caused the death of the victim?

**2.** Due to the actions of appellant on two separate occasions, he was cited for two counts of contempt and sentenced to an additional term of imprisonment totalling one year. Appellant has not challenged the legality or propriety of either of these sentences, therefore, these issues will not be addressed on appeal.

conclusions drawn from those findings. In making this determination, the Court may consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as fairly read in the context of the record as a whole remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse only if there is an error in the legal conclusions drawn from those factual findings. *Commonwealth v. Vinson*, 361 Pa.Super. 526, 529, 522 A.2d 1155, 1157 (1987); *Commonwealth v. Reddix*, 355 Pa.Super. 514, 518, 513 A.2d 1041, 1043 (1986).

■ The pertinent facts surrounding appellant's initial claims were adequately stated by the trial court as follows:

At approximately 5:45 a.m. on August 15, 1986, defendant was arrested on a robbery charge unrelated to this investigation. Later that morning, defendant informed the Reading Police that he had some information concerning the death of Betty Jean Hollis. The police read the *Miranda* rights to the defendant and after he waived the rights he gave an oral statement to police which was later reduced to writing. Defendant initialled each answer on the written statement and signed it as being true and correct. This statement was given to police at approximately 10:45 a.m. that morning.

At 11:44 a.m., the police took defendant to the District Justice's for purposes of pre-arraigning him on the unrelated robbery charge. Defendant was then returned to City Hall.

After lunch, the police obtained another statement from defendant. The police again informed the defendant of his *Miranda* rights. After he waived his rights, the defendant gave an oral statement to police at 2:45 p.m.

The information gleaned from this interview led police to arrest defendant for the murder and rape of Ms. Hollis. The instant arrest occurred at 5:45 p.m. on August 15, 1986. Defendant was promptly pre-arraigned before District Justice Gloria Stitzel sometime between 5:48 p.m. and 6:40 p.m. that date.

After his arrest, defendant initiated a third conversation with police concerning the incident. This statement was also reduced to written form and was signed and initialled by the defendant. Defendant was given, and also waived, his *Miranda* rights before making this statement. Each of the aforementioned statements were later used at trial to establish defendant's guilt.

Trial court opinion at pp. 4–5.

Appellant argues that these statements to the police should have been suppressed because they were violative of the rule announced in *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), and *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). According to this rule, where a defendant is not pre-arraigned within six hours of his arrest, statements obtained after arrest but before arraignment must be excluded from evidence. Under the facts of the case at bar, we find that appellant's argument lacks merit.

Initially, we take note that the rule as announced in *Davenport*, has recently been modified by our Supreme Court in the case of *Commonwealth v. Duncan*, 514 Pa. 395, 525 A.2d 1177 (1987). In *Duncan*, the Court declared:

The [Davenport] rule has been applied on a mechanical basis to violations which bear no relationship to the statement obtained and has shielded the guilty for no reason relevant to the individual circumstances of their case. [Citations omitted.] ... If the statement is obtained within the six hour period, absent coercion or other illegality, it is not obtained in violation of the rights of an accused and should be admissible. In keeping with the underlying objectives of the rule, only statements obtained after the six hour period has run should be suppressed on the basis of *Davenport*.

*Id.*, 514 Pa. at 405–406, 525 A.2d at 1182–1183.

In the case at bar, appellant's first statement is clearly admissible. As the record indicates, it was taken some time after appellant's initial arrest on the robbery charge and prior to his lawful arraignment on that charge which took

place within the six hour limitation. Accordingly, under either *Davenport* or *Duncan*, appellant's initial statement was properly admissible at trial.

Regarding appellant's second statement, the record indicates that it occurred *after* appellant had been arraigned on the robbery charge. As this Court has previously stated:

> While the *Futch* formula was not designed to terminate police interrogation, it was intended to interrupt it after a reasonable period of time to allow the suspect to be advised of his custodial rights by an impartial judicial officer, as opposed to police officials, and in appropriate cases to establish the conditions of his release pending trial.

*Commonwealth v. Jenkins*, 500 Pa. 144, 148, 454 A.2d 1004, 1006 (1982). In the present case, appellant was lawfully arraigned before a magistrate within six hours of his arrest. At that time, he had the opportunity to be advised of his custodial rights by an impartial judicial officer. Accordingly, appellant's second statement was properly admissible at trial.

Finally, with regard to appellant's third statement, the record indicates that appellant initiated the conversation complained of *after* he was lawfully arraigned on the charges in the case at bar. Therefore, for the above reasons, we find that this statement was also properly admissible.

■ Next, we turn to appellant's second argument relating to the suppression of his statements to the police. Appellant argues that these statements were not voluntarily given because, at the time of the questioning, he was under the influence of L.S.D. and was threatened by the Commonwealth with execution. Keeping in mind our standard of review in addressing suppression issues, we find no merit in these contentions. Perusal of the record of the suppression hearing reveals that three different police officers testified that appellant appeared normal, alert, coherent and rational when he spoke. His signature was clear and concise. While appellant testified that L.S.D. made him

asocial, two of the three statements complained of were made at his request. Moreover, upon being questioned by police, appellant never mentioned L.S.D., stating only that he had consumed a small portion of marijuana. Finally, we agree with the trial court that the Commonwealth never "threatened" appellant with execution. Accordingly, we agree that appellant's statements were knowingly and voluntarily made and that they were properly admissible against him.

Appellant's next contention is that the trial court erred in granting the Commonwealth's Petition to extend under Pa. R.Crim.P., Rule 1100, 42 Pa.C.S.A. Two arguments are advanced: first, the petition was never "signed;" and second, the court erred in finding judicial unavailability and due diligence on the part of the Commonwealth. We disagree.

■ Appellant argues that the Commonwealth's petition to extend time for trial under Rule 1100 was never "signed." In support of this argument, he cites Rule 9020 of the Pennsylvania Rules of Criminal Procedure, the pertinent part of which states as follows:

(b) A written motion shall comply with the following requirements:

(1) The motion shall be signed by the person or attorney making the motion. The signature shall constitute a certification that the attorney has read the motion, that to the best of the attorney's knowledge, information, and belief there is good ground to support the motion, and that it is not interposed for delay.

Pa.R.Crim.P., Rule 9020, 42 Pa.C.S.A.

A review of the record indicates that the Commonwealth's petition was timely filed on February 11, 1987. Further review indicates that the petition itself was not signed but that the affidavit accompanying the petition was signed and notarized. The trial court, in addressing this matter, concluded that for purposes of Rule 9020, this signature was sufficient. We agree.

■ Appellant's second argument relating to the alleged Rule 1100 violation is that the trial court erred in finding judicial unavailability and due diligence on the part of the Commonwealth. As our Supreme Court has stated:

> ... [t]he trial court may grant an extension under rule 1100(c) only upon a record showing: (1) the "due diligence" of the prosecution, and (2) certification that trial is scheduled for the earliest date consistent with the court's business; provided that if the delay is due to the court's inability to try the defendant within the prescribed period, the record must also show the causes of the court delay and the reasons why the delay cannot be avoided.

*Commonwealth v. Mayfield*, 469 Pa. 214, 222, 364 A.2d 1345, 1349–1350 (1976).

In assessing whether due diligence has been met, the Commonwealth has the burden, by a preponderance of the evidence, of showing it has met the requirements of Rule 1100(c). *Commonwealth v. Hollingsworth*, 346 Pa.Super. 199, 206, 499 A.2d 381, 384 (1985). Further, on review of a trial court's ruling that the Commonwealth has met its burden, we consider only the evidence presented by the Commonwealth and so much evidence, as fairly read in the context of the record as a whole, remains uncontradicted. *Id.*

Upon review of the record, we are constrained to agree with the trial court that the Commonwealth has met its burden of proving due diligence. Nothing in the record indicates that the Commonwealth was attempting to delay bringing appellant to trial. The Commonwealth timely filed its petition to extend time for trial on February 11, 1987. The case at bar was specifically assigned to the trial judge and it was listed for trial during the February, 1987 trial sessions. Due to an assignment of a lengthy murder trial in another county, however, the trial judge was unable to hear the instant case during that session.[3] During the trial

3. The murder trial in question began on February 2, 1987 and lasted until February 20, 1987. During the course of this trial, a medical emergency arose on February 5, 1987, which resulted in a recess for

judge's absence, another judge was specially presiding over his case load but due to his age and work schedule, was unable to try a case of this length and magnitude. As a result, the case at bar could not be heard until the next trial term which began on March 16, 1987. Due to the absence of the trial judge for medical reasons, the trial did not actually begin until March 18, 1987, the earliest date consistent with the court's business after February 11, 1987.

Thus, the delays encountered in bringing appellant to trial were due, not to a lack of diligence on the part of the Commonwealth, but due to judicial unavailability occasioned in part by the length and complexity of appellant's case. The record clearly reveals the causes of this unavailability and the reasons why it could not be avoided. Moreover, the record demonstrates that trial was scheduled for the earliest date consistent with the court's business. Accordingly, we find that the Commonwealth fully complied with the requirements of *Mayfield* and Rule 1100. Therefore, the trial court did not err in granting the Commonwealth's application for an extension of time within which to commence trial. *See Commonwealth v. Thomas*, 361 Pa.Super. 1, 521 A.2d 442, *appeal denied*, 516 Pa. 617, 531 A.2d 1119 (1987).

Appellant next contends that the trial court erred in its rulings regarding testimony of several witnesses at trial. Four arguments are advanced: first, the court erred in allowing alleged hearsay testimony of the victim to be admitted through three Commonwealth witnesses; second, the court erred in allowing identification testimony beyond an offer of proof and in not granting a mistrial after said testimony was introduced; third, the court erred in allowing testimony of a witness despite his failure to recall the actual date in question regarding his alleged observations; and fourth, the court erred in excluding testimony of a

that day. During this recess, the trial judge did preside over another case involving driving under the influence of alcohol. This case lasted only one day. The trial judge decided not to proceed with the instant case, due to its anticipated length.

newspaper reporter regarding statements made by a coroner as to the time of the victim's death.

It is well settled that the admission or exclusion of evidence is within the sound discretion of the trial court and, absent a clear abuse of that discretion, the decision of the court will not be disturbed on appeal. *Commonwealth v. Saksek*, 361 Pa.Super. 173, 522 A.2d 70 (1987).

■ Appellant first argues that certain hearsay statements of the victim were admitted through three Commonwealth witnesses. Specifically, those witnesses testified that the victim had told them just prior to her death that she was a virgin and had never engaged in oral sex nor had an affinity for it. The trial court determined that these declarations were not hearsay as they were not offered to prove that the victim was a virgin or to generate sympathy, but to show that the victim had a state of mind just prior to her death to avoid sexual activity. We agree. Perusal of the record reveals that appellant claimed to have had an ongoing sexual relationship with the victim and had also claimed to have engaged in a sexual act with her on the night she was murdered. Thus, the victim's state of mind during the time she was with appellant was an important factor in evaluating appellant's culpability and was circumstantial evidence of the victim's expected reaction to appellant's sexual advances. Accordingly, we find no abuse of discretion by the court in allowing this testimony and appellant's claim of error must be rejected.

[6] Appellant then argues that the trial court erred in allowing identification testimony of Shelly Fryberger beyond an offer of proof, and by failing to grant a mistrial after said testimony was introduced. Our review of the record indicates that the Commonwealth's offer of proof was that Ms. Fryberger would testify that she saw the victim with a "black male whom she [would] identify as the defendant." When testifying, however, Ms. Fryberger identified the appellant by name. Appellant objected, arguing that the identification went beyond the offer of proof, and then moved for a mistrial on the basis that Ms. Fryber-

ger's name was never submitted to him as a possible witness. We disagree. Ms. Fryberger's name was included in the Commonwealth's witness list which was provided to appellant, as were police reports which contained her statement that she could not identify the appellant by name. Appellant had a full opportunity to interview her before trial, and to cross-examine her at trial as to these inconsistent statements. Accordingly, we find no error on the part of the trial court.

■ Next, appellant argues that the trial court erred in allowing the testimony of Timothy Maniaci despite the fact that he could not remember the actual date in question regarding his observations. The witness testified that he found a purse belonging to the victim in a portable lavatory located in the park where the victim was found but he could not remember the exact date. The trial court determined that this testimony was competent due to independent corroborating testimony from the boy's father that the purse was found on the day of the murder. Therefore, the court felt that it was proper to allow the jury to decide whether the purse was actually found on that date. We agree.

■ Finally, appellant argues that the trial court erred in refusing to allow testimony of a newspaper reporter regarding statements made by the county coroner, then a lay person, as to the approximate time of the victim's death. The trial court determined that this testimony was hearsay and excluded it on that basis. We find no abuse of discretion in this ruling and, therefore, reject appellant's claim of error.

■ Appellant next contends that the court erred in allowing Deborah Motika, an expert witness, to testify concerning a matter beyond her expertise. Ms. Motika, a clinical laboratory technician and supervisor, testified, over the objection of appellant, regarding the presence of alcohol in samples taken from the victim's stomach contents. Appellant maintains that while the victim was qualified to testify as to the results of her tests, it was beyond her scope of

expertise to testify regarding any inferences or conclusions drawn therefrom. Specifically, appellant objected to the conclusion that the trace of alcohol found in the victim's stomach had not been digested, implying that it had been ingested shortly before death. The trial court determined that Ms. Motika's expertise and experience afforded her the opportunity to do more than testify about the procedures used in the various tests and the results obtained from those tests. In the court's own words:

> Ms. Motika was trained to find the presence of alcohol and drugs in the body fluids and tissues. She understood the metabolic processes which produce and maintain a particular blood alcohol level. She understood the rate at which the body absorbs alcohol. She understood that she must consider all such factors before she could reach her conclusions.

Trial court opinion at 15.

On appeal, the determination of whether a witness is qualified to testify as an expert will be disturbed only where the trial court has abused its discretion. *Commonwealth v. Gross*, 307 Pa.Super. 353, 356, 453 A.2d 620, 622 (1982). In the present case, ample evidence was introduced as to the qualifications of the witness to support the determination of the trial court. Accordingly, we find no error.

Next, appellant claims that the trial court erred in allowing testimony of Sgt. Donald R. Matz, a fingerprint expert, regarding fingerprint comparisons he made on several bottles located at the crime scene. The victim's fingerprint was found on one of the bottles. Appellant argues that, as he was not provided with a copy of Sgt. Matz's report prior to trial, the court erred in allowing this testimony.

Questions involving pretrial discovery in criminal cases lie generally within the discretion of the trial judge and his actions will not be reversed unless such discretion was abused. *Commonwealth v. Upchurch*, 355 Pa.Super. 425, 436, 513 A.2d 995, 1000 (1986). In the case at bar, the trial judge found as a fact that appellant was provided with a copy of the report in question. Further, Sgt. Matz was

listed as a Commonwealth witness and was subpoenaed to testify, thereby affording appellant ample opportunity to interview him and determine the nature of his testimony. Appellant's claim, therefore, must be denied.

 Our next issue is whether the trial court erred by requesting appellant to stand for a comparison to an unknown individual during testimony of a defense witness. John Jaskolka, testified that he heard cries for help in Schlegel Park between the hours of 2 and 3 a.m. on August 2, 1986. Shortly thereafter, he noticed a tall, thin Black or Hispanic male leaving the general vicinity of the voice. Jaskolka could not identify the man's face, but only his general build and contour. After redirect examination, the court asked appellant to rise so that the witness could compare his build and contour with that of the person he had observed in the park. No objection was raised by appellant. Upon completion of testimony of the next witness, appellant moved for a mistrial on the grounds that the court abused its discretion in requiring him to stand. We find this issue to be waived.

It is well settled that to preserve an issue for appellate review, two requirements must be met: first, the litigant must make a timely specific objection; and second, he must argue the alleged error on a post-trial motion. *Commonwealth v. Celijewski,* 324 Pa.Super. 185, 471 A.2d 525 (1984); *Commonwealth v. Hughes,* 268 Pa.Super. 536, 408 A.2d 1132 (1979); *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974). Timeliness requires a specific objection at the proper stage in the questioning of the witness and at the proper stage in the trial proceedings. In the present case, counsel for appellant neither objected to the alleged error by the trial judge when made, nor did he move for a mistrial at that point; rather, counsel waited until the completion of testimony of another witness to bring this matter to the attention of the trial judge. Therefore, since

appellant failed to make a timely objection, consideration of this issue is foreclosed.[4]

Appellant's final contention is that the evidence was insufficient to sustain the verdict. Two arguments are advanced: first, the evidence was insufficient to show that appellant had vaginal sexual intercourse with the victim; and second, the evidence was insufficient to show that appellant caused the death of the victim. We disagree.

In reviewing a claim based on sufficiency of the evidence, we must review the evidence in a light most favorable to the Commonwealth, with all reasonable inferences therefrom to determine if the evidence was sufficient to sustain a verdict. *Commonwealth v. Saksek*, 361 Pa.Super. 173, 177, 522 A.2d 70, 72 (1987).

Upon review of the record under the above standards, we are constrained to agree with the trial court that there was sufficient evidence presented to sustain a finding of guilt to the charges of rape and murder in the third degree. With regard to the charge of rape, appellant admitted to having sex with the victim in Schlegel Park after he left a McDonald's restaurant with her at a time when the Commonwealth's evidence establishes she was murdered. Dr. Neil Hoffman, the autopsy physician, testified with a reasonable degree of medical certainty that the vaginal injuries of the victim were inflicted by "the forcible penetration of a blunt object consistent with a penis." (N.T. trial, at 586–587). Moreover, there was testimony as to the victim's state of mind to refrain from sexual activity. Finally, appellant gave numerous conflicting statements regarding his whereabouts with the victim on the night she was murdered. We find that this evidence could lead a factfinder to reasonably conclude that the admitted intercourse in this case was without the victim's consent.

**4.** In an effort to avoid waiver of this issue, appellant cites the case of *Commonwealth v. Hammer*, 508 Pa. 88, 494 A.2d 1054 (1985). In *Hammer*, our Supreme Court stated that where a trial judge clearly descends from the height of impartiality during the course of a trial, a failure to timely object to the actions of the judge will not result in a waiver. In the present case, nothing of the type occurred, therefore, *Hammer* is inapplicable.

■ Turning to the charge of murder, appellant was observed with the victim throughout the early evening hours of August 1, 1986. According to his own statements, appellant admitted to taking the victim to Schlegel Park for purposes of having consensual sex at a time when the factfinder could determine that the victim was killed. The nature and extent of the victim's vaginal injuries were consistent with a violent act, and tend to disprove appellant's claim of consent. Moreover, evidence was introduced linking appellant to two illegal withdrawals from the victim's bank account at a MAC terminal shortly after the alleged time of death, in close proximity to the same McDonald's restaurant where he had earlier taken the victim. Finally, additional circumstantial evidence was also produced linking appellant to the crime. We are, therefore, constrained to agree with the trial court that sufficient evidence was presented which could lead a factfinder to reasonably conclude that appellant was responsible for the death of the victim.

Having found no basis to support the claims of error asserted by appellant, we have no other alternative but to uphold the decision of the trial court.

JUDGMENT OF SENTENCE AFFIRMED.