May McCLOUD, Appellant,

v.

Yvette McLAUGHLIN and John Stanley, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 8, 2003.

Filed Nov. 25, 2003.

Michael A. Mullen, Philadelphia, for appellant.

Jeffrey B. Killino, Philadelphia, for appellee.

BEFORE: STEVENS, OLSZEWSKI, and BECK, JJ.

OPINION BY OLSZEWSKI, J.:

¶ 1 In the early morning hours of March 10, 2001, May McCloud suffered injuries as a result of an interaction with a one-hundred-pound female Rottweiler. At the time of the incident, Mrs. McCloud was a 67–year–old widow and was walking to her job. Defendant John Stanley testified at trial that he was walking the dog and had the dog leashed, but that the dog somehow got loose. The dog then ran off and jumped upon Mrs. McCloud. While the dog did not bite Mrs. McCloud, the force of the dog's jump knocked her down and caused multiple fractures of her left wrist as well as injuries to her shoulder and face.

¶ 2 Mrs. McCloud then sued John Stanley as well as his girlfriend, Yvette McLaughlin. As defendant/appellee McLaughlin failed to respond to plaintiff/appellant's requests for admissions, McLaughlin effectively admitted that she was the owner of the dog in question and that her concern for plaintiff/appellant's well being was "due to the fact that McLaughlin's dog knocked Plaintiff to the ground."

¶ 3 The jury returned a verdict against Mr. Stanley only, in the amount of $10,000. While the jury specifically found that appellee McLaughlin was the owner of the dog,[1] it concluded that McLaughlin breached no duty to appellant.

¶ 4 Appellant moved for post-trial relief, which was heard by the trial judge and denied.

*DISCUSSION*

¶ 5 Appellant first argues that the lower court erred when it failed to "direct a verdict on liability" against Yvette McLaughlin. This statement is based on appellant's argument that appellee McLaughlin was "negligent *per se* for violating the Philadelphia Code, Philadelphia Ordinance § 10–104." Appellant's Brief at 9. Before we address the merits of this argument, however, we must determine whether appellee is correct in stating that appellant has waived this issue for purposes of our review.

¶ 6 Rule 302(a) of the Pennsylvania Rules of Appellate Procedure states:

**General rule.** Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.

Pa.R.A.P. 302(a). The appellate court's job is to correct errors of law. If counsel

---

1. The trial judge failed to instruct the jury that defendant McLaughlin was, as a matter of law, the owner of the dog. This error is harmless, however, since the jury specifically found McLaughlin the owner of the dog.

never raised a point during trial, it cannot be said that the trial judge made an "error of law" needing to be corrected, even if some legal theory would have demanded that the trial judge erred. *Tagnani v. Lew,* 493 Pa. 371, 426 A.2d 595 (1981). Thus, Rule 302(a) requires, before appellate review can be had, that the grounds relied upon be raised sometime during the lower court proceedings. *Valvano v. Galardi,* 526 A.2d 1216, 1220 (Pa.Super.1987).

¶ 7 In the current case, appellant declares that she "preserved this error by objecting to the court's charge with regard to the Request for Admissions, noting that these admissions 'require a verdict against both defendants as a matter of law.'" Further, in appellant's post-trial motion, appellant again argued that McLaughlin should be liable as a matter of law by virtue of her admissions that she was the owner of the dog. Trial Court Opinion, 5/21/03, at 3. What legal theory would make appellee McLaughlin strictly liable, however, was not explicitly stated. The question is: did the above facts, as well as the fact that the case was tried under an ordinary negligence claim, properly preserve appellant's claim of negligence *per se* for the violation of the Philadelphia Ordinance and/or the Pennsylvania Dog Law?

¶ 8 Obviously, appellant does not have to use the term "negligent *per se*" in order to preserve such a claim on appeal. *Miller v. Hurst,* 302 Pa.Super. 235, 448 A.2d 614, 619 n. 6 (1982). What appellant was arguing during trial and during the post-trial motions, however, was that appellee McLaughlin was liable solely as a result of her ownership status of the dog, not that she was liable because she violated a statute or ordinance. While appellant was arguing this, she also proceeded to recover under ordinary negligence principles. Thus, appellant's argument during trial seems to follow absolute liability and

ordinary negligence theories rather than negligence *per se.* Negligence *per se* is a separate legal theory having elements and underlying rationales different from the other two theories. *See, e.g. Moughon v. Wolf,* 576 S.W.2d 603 (Tex.1978).

¶ 9 Appellant declares that she preserved the issue of negligence *per se* for our review when she objected at trial that "these admissions 'require a verdict against both defendants as a matter of law.'" This is incorrect. The mere fact that appellee McLaughlin was the owner of the dog in question does not establish her negligence. What appellant is arguing is that McLaughlin should be absolutely liable for any damage done by her dog. First off, the Commonwealth does not impose absolute liability on the owner for dog attacks. As we have stated in previous cases: "we are convinced that proof of negligence, in contrast to holding one absolutely liable, is the vehicle by which accountability for injury sustained because of a dog bite is to be established." *Deardorff v. Burger,* 414 Pa.Super. 45, 606 A.2d 489, 493 (1992).

¶ 10 In any event, appellant's statement does not cite to, state, or in any manner allude to any negligence *per se* theory, Philadelphia Ordinance, Pennsylvania Dog Law, or McLaughlin's violation thereof. She merely argues under an absolute liability theory, which is a theory different from negligence *per se.* In fact, absolute liability imposes liability without fault. Under an absolute liability theory, a defendant can be answerable even though he "has exercised the utmost care to prevent the harm." *Melso v. Sun Pipe Line Co.,* 394 Pa.Super. 578, 576 A.2d 999, 1004 (1990). In contrast, when the negligence *per se* theory applies to a case, duty and breach of that duty are not automatically proven. They are proven only by first referencing the violator's action (or inac-

tion) against the statute's words and policy. Absolute liability and negligence *per se* are thus two separate theories, and appellant did not preserve her negligence *per se* theory by arguing under absolute liability.

¶ 11 Appellant also did not preserve the claim of negligence *per se* by proceeding to trial on ordinary negligence principles. It is true that the theory of negligence *per se* is an offshoot of ordinary negligence. If all negligence *per se* entailed was a presumption that defendant had a duty to the plaintiff and that the defendant breached that duty, it might be possible to find appellant preserved this theory by going to trial on negligence grounds. Negligence *per se,* however, means more than this. As will be discussed below, the theory of negligence *per se* runs under a different legal premise than ordinary negligence.

¶ 12 Negligence *per se* begins with the recognition that ordinances as well as statutes regulate conduct. As these regulate conduct, they can also be said to impose legal obligations on individuals and cause people to conform their behavior to what is mandated by the ordinance or statute. The law has acknowledged this and has held that, through an individual's violation of a statute or ordinance, it is possible to show that the individual breached his duty to behave as a reasonable person: in other words, that the individual is "negligent *per se.*"

¶ 13 Since it is the violation of a written law that is the basis for a finding of negligence *per se,* the doctrine is inexplicitly bound up with the statute itself. There can be no finding of negligence *per se* without there first being a statute that regulates conduct and an actual violation of that statute.[2] Further, before an individual can be held negligent *per se,* his violation of the statute or ordinance must "cause[ ] harm of the kind the statute was intended to avoid and to a person within the class of persons the statute was intended to protect." Dan B. Dobbs, *The Law of Torts* § 134 (2000). The reason for these requirements is to determine "whether the policy behind the legislative enactment will be appropriately served by using it to impose and measure civil damages liability." *Lutz v. Chromatex, Inc.,* 718 F.Supp. 413, 428 (M.D.Pa.1989). Yet, appellant never called the ordinance or statute relied upon here to the trial judge's attention and never asked that the jury be instructed that if they find defendant violated either the statute or ordinance, that she could be negligent *per se.* How can it be error for the trial judge to fail to hold McLaughlin negligent *per se* when appellant never mentioned the requisite *basis* for a negligence *per se* claim?

¶ 14 Rather, appellant went to the jury on an ordinary negligence theory. Thus, before the jury could find appellee McLaughlin negligent, it had to first find that she breached a duty to appellant. This "duty" is based on the common law standard of care. *Benson v. Penn Cent. Transp. Co.,* 463 Pa. 37, 46, 342 A.2d 393, 397 (1975). If appellant was proceeding under a negligence *per se* theory, the stan-

---

2.  Negligence *per se* has been defined as

    Conduct, whether of action or omission, which may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances, either because it is in violation of a statute or valid municipal ordinance, or because it is so palpably opposed to the dictates of common prudence that it can be said without hesitation or doubt that no careful person would have been guilty of it.

    *Black's Law Dictionary,* p. 933 (5th ed.1979). Appellant is here arguing, however, that defendant McLaughlin is negligent *per se* for violating the written law.

dard of care would have been different. Under the negligence *per se* theory, this standard would have been defined in accordance with the statute itself, not under the common law. *Miller*, 448 A.2d at 619. Thus, it can safely be said that negligence *per se* and common law negligence impose different standards that have their basis under two different theories of law and can lead to two different outcomes at trial. By not raising the theory of negligence *per se* in the lower court, appellant waived this theory of liability. Pa.R.A.P. 302(a).

¶ 15 After our Supreme Court's opinion in *Dilliplaine v. Lehigh Valley Trust Co.*, a party cannot come to us like appellant does. 457 Pa. 255, 322 A.2d 114 (1974). She tries to fix her case by bringing up something that was probably never even thought of during trial. Without even alluding to the issue of negligence *per se*, appellant cannot say that the lower court erred when it "failed to direct a verdict on liability" against appellee McLaughlin for violation of any statute or ordinance: the lower court was never confronted with such an argument. We believe that appellant never "raised" the issue of negligence *per se* in the lower court and, thus, failed to preserve the issue for review. *Kimmel v. Somerset County Comm'rs*, 460 Pa. 381, 384, 333 A.2d 777, 779 (1975).

¶ 16 Next, appellant contends the lower court erred when it denied her post-trial motion seeking a new trial based on the inadequacy of the verdict. The trial judge determined that the jury verdict of $10,000 was consistent with the evidence and did not "shock [his] conscience." Trial Court Opinion, 5/21/03, at 3.

¶ 17 As the trial judge denied appellant's motion for a new trial because of the court's reasoning that the judgment was consistent with the evidence, an appellate court will not overturn his decision absent "palpable abuse of discretion." *Gottlob v. Hillegas*, 195 Pa.Super. 453, 171 A.2d 868, 870 (1961). This is a tough standard to meet: "[w]e are justified in declaring the lower court guilty of such an abuse of discretion only if we are clearly convinced by the record that the jury was influenced by partiality, passion, prejudice or some misconception of the law or the evidence." *Id.* at 871.

¶ 18 Appellant McCloud did suffer numerous injuries to her body as a result of the incident and demonstrated that she missed work time. Testimony and other evidence demonstrated the amount of work time that she missed was 120 days—from March 10 to July 27, 2001. Even assuming she was making $7.00 per hour,[3] this amounts to lost earnings of $5,880. In appellant's brief, she states that "after returning to work, [she] was only able to work about 15 to 20 hours a week, creating an additional earnings loss from her partial disability." Appellant's Brief at 20.

¶ 19 It was not uncontroverted, however, that appellant's limited work schedule was due to the injuries she sustained in the accident. During cross-examination of Dr. Steinberg, the doctor testified that he saw Mrs. McCloud on July 24, 2001. During this office visit, he told her that she could return to work with the only restrictions that she "avoid repetitive forceful grip and overhead reach with the left arm." He said nothing that would restrain Mrs. McCloud from work time. Two months

---

3. Appellant's brief declares Mrs. McCloud was making $7.00 an hour, and there is evidence from her employer that she was making that much. Mrs. McCloud, however, testified she was making $6.75 per hour at the time of the incident. R.R. at 94A. Further, during closing arguments, her counsel told the jury that they were to calculate her earnings by $6.75 an hour. R.R. at 205A.

later, on September 11, 2001, the doctor examined plaintiff and declared that she had a "good" prognosis at that point. On November 13, 2001, the doctor again met with Mrs. McCloud and told her that she could return to work performing her regular duties. Yet, all throughout this time, appellant was working limited hours. It was the prerogative of the jury to determine when Mrs. McCloud could return to work and with what restrictions.

¶ 20 With respect to the injuries, the doctor also testified that the shoulder pain she complained of could have been due to natural aging.

¶ 21 The jury had the job of hearing and assessing the conflicting testimony. Even if the doctor was not cross-examined in this case, "the jury was not required to accept everything or anything the plaintiff...said, even if [her] testimony was uncontradicted." *Bronchak v. Rebmann*, 263 Pa.Super. 136, 397 A.2d 438, 440 (1979). It appears as if the jury did compensate Mrs. McCloud for the lost work time that the jury thought was a result of the fall and awarded her damages for pain and suffering. But that is neither here nor there, since all we must find is whether the trial judge abused his discretion in refusing to award a new trial for damages. There is no abuse of discretion in this case.

¶ 22 Finally, appellant argues that the inadequate verdict was due to a prejudicial remark by defense counsel during closing arguments. The attorney for the defendants/appellees declared that his clients "are just regular people, a porter and a letter carrier....What are you going to do? Take money out of their pockets and give it to Miss McCloud?...It's Christmas." Appellant, however, failed to make a timely objection to this remark. Thus, appellant waived her right to appeal this issue. *Commonwealth v. DeBooth*, 379 Pa.Super. 522, 550 A.2d 570, 578 (1988).

¶ 23 Further, even though appellant did not immediately object to this remark, after the closing arguments were over *and* after the judge read the jury instructions, appellant's counsel requested the judge issue a curative charge in regards to this statement. The judge acceded and did issue a curative charge. Now appellant comes before us and declares that defendant's statement caused an unreasonably small verdict amount. We fail to see how appellant can say such a thing since appellant made a late objection to the remark and *asked* the judge to issue a curative charge, with the judge then sustaining the objection and doing the very thing appellant asked him to do. Pa.R.A.P. 302(a); *Tagnani*, 493 Pa. at 375–76, 426 A.2d at 597.

¶ 24 Order AFFIRMED.