J-A14036-17

2017 PA Super 277

| | |
|---|---|
| SPIRO KOTE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWABS, INC., ASSETBACKED CERTIFICATE SERIES 2006-20 AND CARRINGTON REAL ESTATE SERVICES, LLC AND SAFEGUARD PROPERTIES, LLC, | |
| Appellees | No. 2404 EDA 2016 |

Appeal from the Judgment Entered July 14, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): December Term, 2014  003476

BEFORE:  BENDER, P.J.E., BOWES and SHOGAN, JJ.

OPINION BY SHOGAN, J.:                    **FILED AUGUST 25, 2017**

Appellant, Spiro Kote ("Kote"), appeals from the judgment entered on July 14, 2016.  The July 14, 2016 judgment made final the March 15, 2016 orders that sustained preliminary objections filed by Carrington Real Estate Services, LLC ("Carrington") and Safeguard Properties, LLC ("Safeguard"), and granted the motion for judgment on the pleadings filed by The Bank of New York Mellon, formerly known as The Bank of New York, as Trustee for

the Certificateholders CWABS, Inc., Assetbacked Certificate Series 2006-20

("BNY Mellon").[1]  After careful review, we affirm.

The trial court summarized the background of this matter as follows:

> On January 28, 2014, between 7:00pm and 8:00pm, [Kote] made a Chinese food delivery to a foreclosed and vacant property located at 6298 Kindred Street in the Oxford Circle section of Philadelphia, PA (herein, the "Property"). [Kote] made the delivery as a result of a phone order. [Kote] knocked on the front door and, after being admitted, was shot in the chest multiple times by an unknown assailant or assailants who were inside the Property. [Kote] suffered serious bodily injury as a result of the shooting. Complaint at ¶ 11-13.

> [Appellee] BNY Mellon owned, operated, possessed, maintained and controlled the foreclosed and vacant property. BNY Mellon entered into an agreement with [Appellee] Carrington to act as … BNY Mellon's agent in the sale of the Property. Carrington also maintained and controlled the Property in its capacity as an agent of BNY Mellon. [Appellee] Safeguard was hired to secure and inspect the Property. *Id*. at ¶ 5-10.

Trial Court Opinion, 12/22/16, at 1-2.

Kote filed his initial complaint against Appellees on December 23, 2014, and following numerous responsive pleadings, Kote filed a first amended complaint on December 28, 2015.  In the amended complaint, Kote alleged that Appellees knew or should have known that criminal acts have occurred in the area of the property at 6298 Kindred Street in Philadelphia ("the Property") where Kote was attacked.  First Amended Complaint, 12/28/15, at ¶¶ 17-24.  Kote further asserted that he was

---

[1] Collectively, Carrington, Safeguard, and BNY Mellon are referred to as "Appellees."

injured due to Appellees' negligence, failure to comply with the City of Philadelphia Property Maintenance Code, and violations of the Restatement (Second) of Torts. *Id*. BNY Mellon filed its answer and affirmative defenses on January 19, 2016, admitting that it was the owner of the Property. Answer and Affirmative Defenses to Plaintiff's Amended Complaint on Behalf of BNY Mellon, 1/19/16, at ¶ 5. BNY Mellon further admitted that it entered into an agreement with Carrington to act as its agent in the sale of the Property. *Id*. at ¶ 6. BNY Mellon also admitted that Safeguard was responsible for securing and inspecting the Property. *Id*. at ¶ 9.

Safeguard and Carrington filed preliminary objections on January 22, 2016, and January 25, 2016, respectively. BNY Mellon filed its motion for judgment on the pleadings on June 2, 2016. As noted above, the trial court sustained the preliminary objections, and dismissed all claims against Carrington and Safeguard. Additionally, the trial court granted BNY Mellon's motion for judgment on the pleadings. This timely appeal followed. Both Kote and the trial court complied with Pa.R.A.P. 1925.

On appeal, Kote raises the following issues for this Court's consideration:

> 1) Was Appellant Kote a business visitor under Section 332 of the Restatement (Second) of Torts?
>
> 2) Did BNY Mellon violate its duty to business visitors under Section 344 of the Restatement (Second) of Torts to discover intentionally harmful acts of third persons or to warn or protect against them?

3) Did BNY Mellon violate its duty under Section 324A of the Restatement (Second) of Torts by failing to exercise reasonable care concerning its undertaking to render services?

4) Did BNY Mellon violate its duty under Section 365 of the Restatement (Second) of Torts by failing to exercise reasonable care to disclose disrepair and its unreasonable risk and to make it reasonably safe?

5) Was the criminal act of third parties a superseding cause of the injuries to Appellant Kote according to Section 448 of the Restatement (Second) of Torts?

6) Is Appellant Kote protected by the Philadelphia Property Maintenance Code, thereby justifying application of negligence per se?

7) Are Carrington and Safeguard, agents of BNY Mellon, bound by the same duties as BNY Mellon, and did they violate the same duties as BNY Mellon?

Kote's Brief at 5-6 (italicization omitted).

The standard we apply when reviewing the grant of a motion for judgment on the pleadings and preliminary objections in the nature of a *demurrer* is as follows:

> Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law.
>
> Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration

- 4 -

to the pleadings and relevant documents. The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted.

We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

*Coleman v. Duane Morris, LLP*, 58 A.3d 833, 836 (Pa. Super. 2012) (citations omitted). Our review of an order sustaining preliminary objections in the nature of a *demurrer* involves similar principles.

Our standard of review of an order of the trial court overruling or [sustaining] preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Richmond v. McHale*, 35 A.3d 779, 783 (Pa. Super. 2012), *quoting* *Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa. Super. 2011).

***Southwestern Energy Production Co. v. Forest Resources, LLC***, 83
A.3d 177, 185 (Pa. Super. 2013).

In his first issue, Kote argues that the trial court erred in failing to
deem Kote a business visitor under of the Restatement (Second) of Torts §
332. Kote's Brief at 12. We disagree.

The relevant part of the Restatement defines a business visitor as
follows:

> (3) A business visitor is a person who is invited to enter or
> remain on land for a purpose directly or indirectly connected with
> business dealings with the possessor of the land.

Restatement (Second) of Torts § 332(3). The trial court concluded:

> [Kote] argues that he was a business invitee of [Appellee]
> BNY Mellon because an unknown criminal called [Kote] to deliver
> Chinese food to the Property. In support of his claim, [Kote]
> relies on Comment c to Section 332 of the Restatement, which
> focuses on "the desire or willingness to receive the person which
> a reasonable man would understand as expressed by the words
> or other conduct of the possessor." [Kote] fails to allege,
> however, that BNY Mellon—either through its employees or
> agents—placed the telephone order that directed him to the
> Property. [Kote] also fails to allege that BNY Mellon's employees
> or agents were present at the Property to invite him to enter
> therein. Other than the allegation that he went to the Property
> "as the result of a telephone order," [Kote] does not allege any
> facts that would indicate he was a business invitee of
> [Appellees]. Complaint ¶11. This allegation is insufficient as a
> matter of law because [Kote] also concedes that the person who
> made the phone call to [Kote] was the unknown criminal, not
> BNY Mellon. As a result, [Kote's] claim under Section 332 fails.

Trial Court Opinion, 12/22/16, at 34-35.

We agree with the trial court. Kote concedes that he was lured to the
property by an unknown individual, and he cannot claim that he was invited

for a purpose directly or indirectly connected with the business dealings of any Appellee.

Next, Kote avers that BNY Mellon violated its duty to business visitors under Section 344 of the Restatement. Kote's Brief at 19. Because we concluded that Kote was not a business visitor, this claim fails.

In his third issue, Kote asserts that BNY Mellon violated its duty under Section 324A of the Restatement by failing to exercise reasonable care concerning its undertaking to render services to protect third persons. Kote's Brief at 25. Section 324A provides as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> > (a) his failure to exercise reasonable care increases the risk of such harm, or
> >
> > (b) he has undertaken to perform a duty owed by the other to the third person, or
> >
> > (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A.

The trial court discussed the application of Section 324A as follows:

> [Kote] argues that Carrington was negligent under Section 324A of Restatement (Second) of Torts, which provides that one who undertakes, either gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting

from his failure to exercise reasonable care to protect his undertaking.

First, Section 324A does not apply because [Kote] is not within the class of persons that the security services were designed to protect nor was the harm that he suffered the type of risk Carrington's alleged agreement to secure the vacant Property was intended to avert. "Securing vacant dwellings is intended to protect members of the public who might otherwise be tempted to trespass therein and to protect neighboring property owners from risks such as fire and unsanitary conditions which might be created by trespassers." **Glick v. Olde Town Lancaster, Inc.**, 535 A.2d 621 (Pa. Super. Ct. 1987).[2] Here, as in **Glick v. Old Town Lancaster, Inc.**, [Kote] was injured at the vacant Property as a result of the intentional and deliberate criminal acts of a third party. "The unsecured dwelling was a fortuitous factor in the crimes committed against" [Kote]. In other words, what was necessary and important to the criminal actor was that it was an abandoned building, not

_____

[2] In **Glick**, the victim-appellant was forced into a vacant building and raped. **Glick**, 535 A.2d at 623. The appellant subsequently filed suit against the building's owner for, *inter alia*, its failure to secure the building. **Id**. at 624. This Court held:

[S]ection 324A is inapplicable to this case because [the] appellants were not within the class of persons the provision was designed to protect. In order for section 324A to apply, it must be established that the service of resecuring the dwellings was necessary for the protection of persons such as appellants.

We do not view the harm suffered by [the] appellant Glick as being the type of risk which [the building owner's] promise to resecure the dwellings was intended to avert. Securing vacant dwellings is intended to protect members of the public who might otherwise be tempted to trespass therein and to protect neighboring property owners from risks such as fire and unsanitary conditions which might be created by trespassers.

**Glick**, 535 A.2d at 624 (citation omitted).

whether it was properly secured, Thus, even assuming that Carrington undertook a duty to secure the Property as part of its agreement with BNY Mellon, any alleged failure to secure the vacant property "is far too attenuated to support a cause of action under Restatement § 324A." *Id*.

Second, the alleged failure by Carrington to not secure the Property did not increase the risk of harm to [Kote]. *See* Restatement (Second) of Torts, § 324(A)(a). The fact that the Property was unsecured was a "fortuitous" and incidental factor that is too far attenuated to increase the risk of harm. What was important and necessary for the crime to have occurred is that the building was vacant, not unsecured.

Third, there are no facts that would establish that, by acting as BNY Mellon's agent in sale of the Property, Carrington undertook a duty to provide protection to third parties such as [Kote] from criminal conduct on the Property. *See* Restatement (Second) of Torts, § 324(A)(b). In other words, as BNY Mellon's agent, Carrington undertook the responsibility to sell the Property to a prospective buyer. As such, Carrington's duties under its real estate agreement with BNY Mellon are limited to BNY Mellon and prospective buyers, not to food delivery persons such as [Kote] who had no interest in purchasing the property. *See Farabaugh v. Pa. Turnpike Comm'n.*, 911 A.2d 1264 (Pa. 2006) ("A contracting party's duty to third parties ... are measured by the nature and scope of its contractual undertaking.").

Fourth, [Kote] has not alleged that he relied on Carrington's undertaking to secure the vacant dwelling, nor does [Kote] allege that he was aware of Carrington's agreement such that he could have relied upon it in the first place. *See* Restatement (Second) of Torts, § 324[A] (c) (requiring that "the harm is suffered because of reliance of the other or the third person upon the undertaking").

For these several reasons, [Kote] cannot establish a claim against Carrington under Section 324A.

* * *

[Kote] also alleges that BNY Mellon owed him a duty of care because it hired [Appellee] Safeguard to secure the

Property and that "a program of security was undertaken" by Safeguard. [Kote] further alleges that [Appellee] Safeguard was negligent in that it failed to "lock and secure doors, windows and entrances or openings ... in the vacant property." Complaint at ¶ 17f.

As explained **supra** … [Kote] cannot state a claim based upon Section 324A because there is no evidence that BNY Mellon undertook to protect its property on behalf of anyone other than itself as property owner. In other words, there is no allegation that BNY Mellon provided any security for the benefit for a third party such as [Kote]. Thus, [Kote] is not within the class of persons that the security services were designed to protect nor was the harm that he suffered the type of risk that the securing of the Property was intended to avert.

Trial Court Opinion, 12/22/16, at 26-27, 35 (footnote omitted). We agree with the trial court that the harm suffered by Kote was not the type of harm Section 324A is intended to prevent. Kote alleged that Safeguard was hired to secure and inspect the Property, not to provide personal security for the benefit of any class of persons. First Amended Complaint, 12/28/15, at ¶ 9. Indeed, Kote's specific factual averments all relate to the **condition** of the property. **See id**., at ¶ 17(a)-(k). Kote was not injured as a result of the condition inside the vacant building; he was intentionally shot by an unknown third party. Just as in **Glick**, the relationship between Kote and Appellees is too attenuated to support a cause of action under Section 324A. **Glick**, 535 A.2d at 624-625.

In his fourth issue, Kote claims that BNY Mellon violated its duty under Section 365 of the Restatement (Second) of Torts to make the Property reasonably safe. Kote's Brief at 34. Section 365 provides:

> A possessor of land is subject to liability to others outside of the land for physical harm caused by the disrepair of a structure or other artificial condition thereon, if the exercise of reasonable care by the possessor or by any person to whom he entrusts the maintenance and repair thereof
>
>> (a) would have disclosed the disrepair and the unreasonable risk involved therein, and
>>
>> (b) would have made it reasonably safe by repair or otherwise.

Restatement (Second) of Torts § 365.

In his first amended complaint, Kote did not allege that any disrepair of the Property or artificial condition of the Property caused him harm. Moreover, as the trial court found, the allegedly unsecured doors and windows did not cause Kote's injuries. Trial Court Opinion, 12/22/16, at 35. These conditions, at most, merely facilitated the injuries. *Id*. "Additionally, it was not reasonably foreseeable that the Property would be used by unknown assailants to attack and shoot Kote." *Id*. at 34-35. As such, Kote has failed to state a cause of action against Appellees under Section 365.

In his fifth claim, Kote alleges that the trial court erred in concluding that the criminal acts of third parties were the superseding cause of Kote's injuries under Section 448 of the Restatement (Second) of Torts. Kote's Brief at 39. Section 448 provides as follows:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood

- 11 -

that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

Restatement (Second) of Torts § 448.

The trial court opined that:

> [Kote] cannot establish that any negligence by Carrington was the proximate cause of his harm because the criminal acts of an unknown person were a superseding cause of [Kote's] injuries. **See generally**, Restatement (Second) of Torts, § 448.[5]
>
> > [5] The question of whether the conduct of a third person in committing a crime is a superseding cause of harm to another even though the actor's negligence created a situation which afforded the criminal party an opportunity to commit such crime, is not reached unless a duty has first been established. "A duty must attach before ... section 448" can apply. **Roche v. Ugly Duckling Car Sales, Inc.**, 879 a.2d 785, 796 (Pa. Super. Ct. 2005).
>
> Proximate cause does not exist where a defendant's negligence was so remote that the defendant cannot be held legally responsible as a matter of law for the harm that resulted to the plaintiff. **Brown v. Philadelphia College of Osteopathic Medicine**, 760 A.2d 863, 869 (Pa. Super. Ct. 2000). The question of whether a defendant's negligence was the proximate cause of a plaintiff's harm requires a determination by the court whether, as a matter of law, "the injury would have been foreseen by an ordinary person as the natural and probable outcome of the act complained of." **Reilly v. Tiergarten Inc.**, 633 A.2d 208, 210 (Pa. Super. Ct. 1993). If the court determines from the facts as alleged that it is "highly extraordinary that the defendant's conduct should have brought about the plaintiff's harm" then the court should refuse to find that the defendant's conduct was the proximate cause of the plaintiff's harm. **Brown, supra** at 868.
>
> Here, even assuming *arguendo* that Carrington had a duty to secure the Property, [Kote's] claims still fail because he cannot prove that [Appellees] should have foreseen that

unknown assailants would unlawfully enter the Property, conspire to lure an unsuspecting food delivery driver to the Property, and then ambush and shoot him as he delivered the food order. **See Glick v. Olde Town Lancaster, Inc**., **supra** at 624 (defendant who made its promise to resecure its buildings had absolutely no reason to foresee that the service was necessary for the protection of victims such as plaintiff). At best, the Complaint alleges that violent crimes toward the general public occur throughout Philadelphia as well as the neighborhood where the Property is located. [Kote] does not allege any specific facts that Carrington knew, or should have known, that the Property had or would be used criminally by armed assailants lying in wait to attack and shoot food delivery persons such as [Kote]. As such, the harm suffered by [Kote] was not foreseeable, but was rather highly extraordinary.

Stated differently, generic allegations that violent crime occurs throughout Philadelphia and even in a particular neighborhood are not sufficient to establish that any negligence by Carrington was the proximate cause of [Kote's] injuries. To the contrary, the unknown third party's criminal acts were a superseding cause unrelated to whether the Property was properly secured or not. "Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care *until he knows or has reason to know that the acts of the third person are occurring, or are about to occur*." Restatement (Second) of Torts, §344, Comment f (emphasis added).

In sum, the vacant Property "was a wholly fortuitous factor in the crimes committed against" [Kote], which crimes "would have been accomplished" whether or not [Appellees'] "property remained unsecured." **Glick v. Olde Town Lancaster, Inc.**, 535 A.2d at 624. The assailants could have ambushed [Kote] as [Kote] exited his vehicle or shot him on the sidewalk. As the Supreme Court aptly noted, "the criminal can be expected anywhere, any time, and has been a risk of life for a long time. He can be expected in the village, the monastery and the castle keep." **Feld** [**v. Merriam**,] 485 A.2d [742,] 746 [(Pa. 1984)]. Here, there is no connection between the existence of the allegedly unsecure vacant Property and the crime of shooting a person with a firearm such that the harm that occurred would naturally flow from any negligence by Carrington. Instead,

- 13 -

[Kote's] injuries resulted from the superseding, intervening and highly extraordinary ambush of [Kote] by criminal [actors].

* * *

[Kote's] claim against BNY Mellon fails for the same reasons that [Kote's] claim against Carrington fails …. In other words, pursuant to Section 448 of the Restatement (Second) of Torts, any negligence by BNY Mellon was not the proximate cause of [Kote's] injuries. Rather, the criminal acts of a third party superseded any negligence by BNY Mellon.

Trial Court Opinion, 12/22/16, at 28-30, 36 (some citations omitted). We discern no error of law or abuse of discretion in the trial court's analysis or conclusion. The unknown shooter was a superseding cause of Kote's injuries, and if there was any negligence on the part of Appellees, it was not the proximate cause of the injuries Kote suffered.

In his next issue, Kote asserts that he was protected by the Philadelphia Property Maintenance Code, and therefore, negligence *per se* was applicable. Kote's Brief at 47. We disagree.

The Philadelphia Property Maintenance Code was:

promulgated to protect the public health, safety and welfare in existing structures and on existing premises by establishing minimum requirements for:

1. Safe and sanitary maintenance of structures, premises and equipment;

2. Equipment and facilities for space, light, ventilation, heating, sanitation and protection from the elements;

3. Safety to life, safety from fire and other hazards.

The code establishes responsibilities of owners, operators, agents and occupants and provides for licensing of certain properties.

Philadelphia Property Maintenance Code 101.2.    The intent of the

Philadelphia Property Maintenance Code:

is to insure public health, safety and welfare to the extent they are affected by the continued occupancy and maintenance of existing structures and premises. Existing structures and premises which are not in compliance with this code shall be altered or repaired to provide the minimum health, safety and welfare as required herein.

Philadelphia Property Maintenance Code 101.3.

Moreover, the concept of negligence *per se* is defined as follows:

Negligence *per se* is defined as "conduct, whether of action or omission, which may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances." ***Wagner v. Anzon, Inc.***, 453 Pa.Super. 619, 684 A.2d 570, 574 (1996) (quoting Black's Law Dictionary, p. 933 (5th ed. 1979)). We start with the premise that, since ordinances and statutes regulate conduct, they also may impose legal obligations on individuals. ***McCloud v. McLaughlin***, 837 A.2d 541, 545 (Pa.Super.2003). As this Court stated in ***McCloud***, "[n]egligence *per se* is the law's acknowledgement that through an individual's violation of a statute or ordinance, it is possible to show that the individual breached his duty to behave as a reasonable person, *i.e.*, that the individual was negligent." ***Id***.

***Walters v. UPMC Presbyterian Shadyside***, 144 A.3d 104, 121 (Pa.

Super. 2016).

[T]o proceed on a negligence *per se* theory, a plaintiff must prove the purpose of the statute, at least in part, was to protect the interest of a specific group of individuals, as opposed to the general public, and that the statute or regulation clearly applied to the defendant's conduct. In order to recover, the plaintiff must also prove that the defendant violated the statute or

regulation and that **the violation was the proximate cause of injury.**

*Id*. at 122 (emphasis added).

Because it is dispositive of the issue, we reiterate that in the case at bar, there was a superseding act by a third party. Therefore, even if we were to conclude that the purpose of the Philadelphia Property Maintenance Code is to protect individuals on or near vacant properties from criminal acts committed by persons who were allowed to enter those properties due to its deteriorated condition, we would still find that Kote's claim fails. As we concluded above, the unknown shooter was a superseding cause, and Kote has not established that any conduct or negligence on the part of Appellees was the proximate cause of his injuries. Thus, this claim fails. *Walters*, 144 A.3d at 122.

Finally, Kote alleges that Carrington and Safeguard are agents of BNY Mellon, they are bound by the same duties as BNY Mellon, and they violated those duties. Kote's Brief at 53. We conclude that no relief is due.

As discussed previously, Kote has failed to establish that any duties were owed to him by BNY Mellon, Carrington, or Safeguard, and that any action or inaction on their part was the proximate cause of his injuries. As such, recovery is not possible.

For the reasons set forth above, we discern no error of law or abuse of discretion in the trial court granting Carrington's and Safeguard's preliminary

objections or BNY Mellon's motion for judgment on the pleadings. Accordingly, we affirm the judgment entered in this matter on July 14, 2016.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/25/2017