J-S74017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOSEPH S. SHARP | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES CASTRO, RACHEL CASTRO, | : | |
| AND  SPECTRUM ENTERPRISES, LLC, | : | |
| | : | No. 1121 EDA 2019 |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH S. SHARP AND KAREN | : | |
| SHARP | | |

Appeal from the Judgment Entered April 15, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2013-13865

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED MARCH 05, 2020**

James   Castro,   Rachel   Castro,   and   Spectrum   Enterprises,   LLC

---

[*] Former Justice specially assigned to the Superior Court.

(collectively, Appellants), appeal from the judgment[1] entered against them and in favor of Joseph S. Sharp (Appellee). We affirm.

The trial court set forth the relevant factual and procedural history as follows:

> The instant matter commenced when [the] underlying Plaintiff/Seller, … Appellee[], issued Complaint in Civil Action alleging, *inter alia,* breach of contract claims against … Appellants[]. The underlying facts which resulted in the instant civil action began in 2009 when Appellee wanted to retire from and sell his business known as Dependable Auto Service ("the Business"), located on 230 Tanner Avenue in Hatboro, Montgomery Country, Pennsylvania ("the Property"). Appellee entered into an agreement with Appellant[s] to purchase the Business, lease the Property with an option to purchase, and signed a consulting/employment arrangement for Appellee in the Business.[2]
>
> The trial court scheduled this matter for a two (2) day bench trial to be heard on October 29, 2018. Ultimately, the trial lasted three (3) days. The trial court's findings in this matter, relevant to the instant appeal, are summarized as follows: On January 15, 2010, Appellee and Appellants entered into an Agreement of Sale for the Business. Simultaneously with the entry of the Agreement of Sale, the parties adopted the J&R Option, which elaborated on the provisions on the Agreement of Sale and a Lease Purchase

---

[1] Appellants purport to appeal from the Order denying their post-trial motion, in which they challenged the non-jury verdict against them. "An appeal from an order denying post-trial motions is interlocutory. Pa.R.A.P. 301(a), (c), and (d)[.] Once that judgment is entered however, our jurisdiction is perfected." **Keystone Dedicated Logistics, Inc. v. JGB Enters.**, 77 A.3d 1, 2 n.1 (Pa. Super. 2013) (brackets, ellipses, internal quotation marks and citations to case law omitted). Here, the trial court's docket reflects that judgment was entered against Appellants on April 15, 2019. Accordingly, we amended the caption to reflect that the appeal properly lies from the April 15, 2019 judgment.

[2] The parties drafted the agreements without the benefit of counsel.

Option Agreement ("Lease Purchase Option") for the purchase of the Property.

Both parties acknowledged that the agreements, as drafted, were ambiguous. Additionally, both parties testified that they viewed the sale of the [B]usiness, the consulting agreement, the lease and the option[,] as a single transaction, intended to transfer the [B]usiness, provide Appellee a consulting contract, lease the Property and eventually transfer the business property.

## A. The Agreement of Sale

Under the Agreement of Sale for Dependable Auto ("[t]he Agreement"), Appellants were to acquire the assets of the Business for a purchase price of $85,000. Appellants provided Appellee with a $34,250 down payment for the purchase of the Business at the time of closing[,] with a $50,750 balance plus interest of 7.5% remaining. The Agreement is silent as to the time period for payment of this balance, but does provide January 16, 2010, as the closing date for Appellee to deliver possession of the assets. Appellants were responsible for payment of bills, including insurance related to business operations. Moreover, if Appellants breached the [A]greement, Appellee had the right to void the [A]greement and repossess the Business.

## B. The Lease Purchase Option

The Lease Purchase Option provided Appellants with an option to purchase the Property for the sum of $465,000 at the end of a six-year lease period. Appellants had an obligation to provide Appellee with $39,600 annually for rent for a period of six years, equating to a monthly rental obligation of $3,300. Provided rent was paid in full each month, $1,150 from each month's rent[,] beginning January 2010 through the execution of the option to purchase, would be applied to the purchase price. If Appellants defaulted on their obligations, Appellee could terminate the option to purchase by giving written notice of the termination. If terminated, Appellants would lose [their] entitlement to any refund of rent or the option to purchase.

The Lease Purchase Option clearly established that rent was $3,300 per month. The parties agreed that for six years[,] $1,150 of the rental amount would be applied to the purchase price of the [Business,] and there was no allowance for a decrease in rental

payments. Appellants' initial lease agreement ended on January 31, 2016. Upon expiration [of] the initial lease term, Appellee increased the rent amount. Appellee presented no evidence of the market rate for rental of the [P]roperty after the expiration of the lease term, nor did Appellee provide any evidence that Appellants received notice of the rental increase. Appellants did not pay the increased rental payments but[,] instead[,] unilaterally reduced the [monthly] rental amount by $1,150.

Appellee filed [a] Complaint on June 6, 2013, prior to the expiration of the initial lease agreement, alleging that Appellants violated and overstayed their lease, wrongfully terminated Appellee's consulting contract, destroyed tools and wrongfully prohibited Appellee from entering the [P]roperty. With the underlying litigation ongoing, Appellants completed their six years of lease payments and business install payments in December 2015 and demanded that Appellee sell the [P]roperty.

### C. Consulting Agreement

The Agreement also included a provision which provided that Appellee would work, as an independent contractor, for a six-year period. The provision required Appellee to work 25-30 hours per week of consulting, sales and light mechanical work from 8:30 a.m. until 2:00/3:00 p.m. each weekday. There is nothing in the Agreement regarding payment for Appellee's work. The J&R Option provided for payment to Appellee of 25% of the gross profits [of the Business], not to exceed $6,000 per week and capped at $35,000 per year. It was the expressed intention of the parties that Appellee would receive an additional $35,000 per year from the gross profits.

Despite the fact that no document connects this payment requirement from Appellee to his work, both parties testified that this payment plan was for the work Appellee was to perform for Appellants. Appellee was, in fact, paid $35,000 each year, which was the maximum provided by the [A]greement for the years 2010, 2011 and 2012, and a weekly payment totaling $8,077 in 2013[,] until his termination.

By early 2013, the business relationship between Appellants and Appellee was untenable, and a cohesive working relationship was unable to be maintained because of both parties' personality conflicts. Appellee's employment was terminated by Appellants

on March 26, 2013.  Appellants gave a variety of reasons for the termination, stemming from [Appellee's alleged] poor work performance, bad attitude and refusal to provide [Appellee's] social security number to enable Appellants to provide Appellee with a 1099.[3]  Appellants documented three instances over three years of Appellee's non-compliance with their internal regulations.

After the trial, the trial court ordered both parties to submit findings of fact and conclusions of law.  On March 12, 2019, the trial court issued its decision, wherein the trial court ordered, *inter alia,* the following:

> 1. Judgment shall be entered in favor of [Appellee] and against [Appellants] in the amount of **$141,168.46.**
>
>    i. [Appellee] is owed $26,923.20 for 2013, $35,000 each year for 2014 and 2015, and $3,365.40 2016 for breach of contract as a result of the wrongful termination of the business relationship[,] totaling **$96,482.**
>
>    ii. [Appellee] is owed rent, in the amount of $3,300 per month since the expiration of the initial lease term.  [Appellants] paid $2,150 per month, as such, [Appellee] is owed **$42,550** in back rent.

(Decision p. 10, 3/12/19 (#135) (emphasis in original).)

Trial Court Opinion, 7/26/19, at 1-5 (footnotes added, footnotes in original and most citations to record omitted).

Appellants timely filed a post-trial motion, which the trial court denied on March 22, 2019.  Appellants then filed a timely notice of appeal, followed

---

[3] A "1099" is an Internal Revenue Service (IRS) tax record that an entity or person paid an independent contractor certain sums of money during the tax year, copies of which are sent to the IRS and the contractor.

by a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) concise statement of errors complained of on appeal.

Appellants present the following issues for our review:

1. In a dispute over whether [Appellants] wrongfully terminated [Appellee] as their consultant in breach of his contract, or instead [Appellee] refused to perform his duties (*i.e.* quit), should the Trial Court have excluded from evidence a letter from [Appellee's] attorney expressing [Appellee's] refusal to come back to work unless certain changes were made to [Appellee's] contract, upon the basis that said letter was a settlement communication barred by Pa.R.E. 408?

2. In a dispute over whether [Appellants] wrongfully terminated [Appellee] as their consultant in breach of his contract, or instead [Appellee] refused to perform his duties (*i.e.* quit), was there competent evidence upon which to conclude that [Appellants] wrongfully terminated [Appellee] when – prior to the date of the perceived termination – [Appellee] communicated to [Appellants] a refusal to come back to work unless certain changes were made to [Appellee's] contract?

3. In a landlord-tenant dispute arising out of a lease-to-purchase contract, where (a) the Trial Court found that [Appellants] had not so materially violated the lease that their right to purchase [Appellee's] property at the conclusion of the lease was forfeit, (b) [Appellee's] refusal to allow [Appellants] to purchase said property involuntarily forced [Appellants] to become holdover tenants, and (c) [Appellants] nonetheless continued paying [Appellee] the same amount of rent that the lease provided, less a credit toward purchasing the property that the lease no longer allowed [Appellants] to earn, should the Trial Court have concluded that [Appellants] owed [Appellee] the no-longer-applicable purchase credit portion of rent for every month [Appellants] continued to occupy the [P]roperty as holdover tenants while they were wrongly denied the right to purchase the [P]roperty?

Brief for Appellants at 3-5 (answers to questions omitted).

Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by

the record and whether the trial court erred in applying the law. Upon appellate review the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.

***Century Indem. Co. v. OneBeacon Ins. Co.***, 173 A.3d 784, 802 (Pa. Super. 2017) (citations omitted).

In their first issue, Appellants argue that the trial court committed reversible error when it excluded from evidence a letter, dated April 3, 2013 (the Letter), that Appellee's counsel sent to counsel for Appellants regarding the dispute.[4] ***See*** Brief for Appellants at 28-35. We disagree.

Our standard of review follows:

Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest

---

[4] In the Letter, Appellee's counsel addressed Appellants' firing Appellee from the Business one week earlier, as well as outstanding payments that Appellee claimed he was owed. The Letter stated, in relevant part, that "[i]n light of the recent developments and acrimony that developed between our clients, [Appellee] is willing to continue working for the [Business], on modified terms as discussed below." Letter, 4/3/13, at 2; ***see also id.*** at 2-3 (explaining the modifications and conditions that Appellee would require to resume his employment). The Letter explained that if the parties were unable to agree upon the proposed modifications, Appellee would "exercise his rights to remedies under the Agreement of Sale." ***Id.*** at 2. Additionally, in response to Appellants' request and allegation that Appellee may have engaged in improper tax activity, Appellee enclosed with the Letter a copy of his completed "W-9" IRS form. This form is used to report certain information about independent contractors, so that their annual earnings can be reported for tax purposes.

unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Parr v. Ford Motor Co.*, 109 A.3d 682, 690-91 (Pa. Super. 2014) (*en banc*) (citations and quotation marks omitted).

The trial court excluded the Letter, upon Appellee's objection, pursuant to Pennsylvania Rule of Evidence 408 (governing the admissibility of settlement communications), which provides in relevant part:

Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contraction:

(1) furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or a statement made during compromise negotiations about the claim.

Pa.R.E. 408(a); *see also* Pa.R.E. 408(b) (setting forth exceptions to the general rule).

We conclude that the trial court correctly ruled that the Letter contained settlement negotiations, and thus properly excluded it under Rule 408(a). Appellee stated in the Letter that he was willing to settle the dispute between the parties, and return to work, if Appellees agreed to certain modifications to the parties' agreement.  Moreover, contrary to Appellants' assertion, the mere

fact that a settlement offer also includes a provision that the offer will be accepted only if certain conditions are agreed to does not make such offer admissible under Rule 408(a), nor does it meet any of the exceptions contained in Rule 408(b).

Finally, we note that Appellants assert, for the first time on appeal, that the trial court should have admitted the Letter as a declaration against interest.  **See** Brief for Appellants at 30, 33; **see also** Pa.R.E. 804(b)(3) (providing that an acknowledgment by a party that it was he or she who was at fault is an exception to the rule against hearsay and is admissible).  It is well established that a new theory of relief may not be advanced for the first time on appeal, as "before appellate review can be had, [] the grounds relied upon [must] be raised sometime during the lower court proceedings." **McCloud v. McLaughlin**, 837 A.2d 541, 544 (Pa. Super. 2003); **see also** Pa.R.A.P. 302(a).  Because Appellants did not raise this theory of relief before the trial court, we will not entertain it on appeal.[5]  Accordingly, Appellants' first issue does not merit relief.

Appellants next contend that the trial court erred in finding that their failure to re-employ Appellee following his termination was a breach of contract, where Appellee had communicated to Appellants, via the Letter, that he would resume employment only if Appellees agreed to certain

_____

[5] Nevertheless, even if Appellants had properly preserved this claim, we would determine that it lacks merit.

conditions/modifications. *See* Brief for Appellants at 36-40. Appellants assert that the conditions in the Letter required Appellants to "agree[] to materially alter [Appellee's] consulting agreement[,]" and "would have constituted an 'anticipatory breach of contract[.]'" *Id.* at 36-37. Appellants contend that an anticipatory breach of contract occurs where, as here, the party expresses an unequivocal "intention not to perform except on conditions which go beyond the contract[.]" *Id.* at 37 (quoting *Lane Enters. v. L.B. Foster Co.*, 700 A.2d 465, 473 (Pa. Super. 1997)); *see also* Brief for Appellants at 38 (averring that the Letter "laid out several new terms that, *inter alia*, reduced [Appellee's] working hours, eliminated [Appellee's] duty to perform 'light mechanical work,' and reduced the benefit to [Appellants] of their lease to purchase option[.]").

We discern no error or abuse of the trial court's discretion in determining that Appellants' terminating Appellee's employment constituted a breach of contract where (1) Appellee did not repudiate the entire contract; and (2) Appellee provided Appellants with his W-9 tax form, pursuant to their demand, but Appellants never permitted him to return to work. Moreover, we disagree with Appellants that the conditions that Appellee included in the Letter constituted an anticipatory breach of contract, particularly where Appellee neither refused to return to work nor repudiated the contract. *See*, *e.g.*, *Oak Ridge Constr. Co. v. Tolley*, 504 A.2d 1343, 1347 (Pa. Super. 1985) (where counsel for defendants (homeowners) sent a letter to plaintiff (construction

contractor) disputing the amount defendants owed plaintiff under the terms of the contract for plaintiff's well drilling work, in response to which plaintiff ceased work and claimed anticipatory breach of contract, rejecting plaintiff's claim where "[t]he letter merely stated that the charges for work performed under … the contract's specifications were 'in dispute or disagreement[,]' and … [t]he letter did not contain an unequivocal refusal to pay the drilling charges or a repudiation of the entire contract.").[6]  Accordingly, Appellants' second issue lacks merit.

In their third and final issue, Appellants argue that the trial court erred in ruling that they were responsible, as hold-over tenants, to pay Appellee unpaid rent of $1,150.00 per month for a period of approximately 2½ years, following the expiration of the initial 6-year lease term.  *See* Brief for Appellants at 40-45.  According to Appellants:

> When the time to purchase [the] [P]roperty arrived, [Appellants] provided the requisite notice of their intention to move forward, and [Appellee] refused to allow the purchase to move forward[.] [Appellants] were involuntarily reduced from would-be owners to holdover tenants.  In this scenario, with the lease expired and the $1,150.00-per-month purchase credit no longer being earned, [Appellants] reduced their monthly rental payments to [Appellee] by the same amount[.]

---

[6] We are also persuaded by Appellee's contention that the offer in the Letter to "resolve the matter on new settlement terms, which, if not complied with[,] will force the non-breaching party to assert their legal rights, is not a breach. It is merely an attempt to resolve."  Brief for Appellee at 14.

*Id.* at 41 (citations to record and emphasis omitted). Appellants contend that "[a]lthough the agreed-upon rent in the parties' lease was $3,300.00 per month, [Appellants] only agreed to this arrangement when they rightfully expected that $1,150.00 of this amount would be set aside and saved toward the eventual purchase of the [P]roperty." *Id.* at 45 (internal citations omitted).

The trial court opined that it did not err in ordering Appellants to pay unpaid rent, and detailed its reasoning:

> The trial court did not err in determining that Appellee was entitled to judgment against Appellants for $1,150.00 per month in unpaid rent. It is uncontested that the agreements are ambiguous. When an ambiguity in [a] contract exists, parol evidence is admissible to explain, clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the contract, or latent, created by extrinsic or collateral circumstances. *See Miller v. Poole*, 45 A.3d 1143[, 1146] (Pa. Super. 2012). Further, both parties testified that they viewed the sale of the [B]usiness, the consulting agreement, the lease and the option as a single transaction, intended to transfer a business, provide Appellee a consulting contract, lease the Property and ultimately transfer the [B]usiness property.
>
> Under Pennsylvania contract law, where several instruments are made as part of one transaction[,] they will be read together, and each will be construed with reference to the other; and this is so although the instruments may have been executed at different times and do not in terms refer to each other. *Huegel v. Mifflin Const. Co.*, 796 A.2d 350, 354-55 (Pa. Super. 2002) (*See also Int'l Milling Co. v. Hachmeister, Inc.*, 110 A.2d 186[, 191] (Pa. 1955) [(stating that] [t]here is no ["]requirement that a contract be evidenced by a single instrument[,"] and, ["i]f contracting parties choose, they may express their agreement in one or more writings, and, in such circumstances, the several documents are to be interpreted together, each one contributing … to ascertainment of the true intent of the parties[."])]; *Black v. T.M. Landis, Inc.*, 421 A.2d 1105, 1107 (Pa. Super. 1980) [(stating

that] when two or more contractual documents are executed at the same time and involve the same transaction, they should be construed as a whole, even when the parties are not the same.) Accordingly, the trial court considered parol evidence, and read the several instruments together.

While the collective agreements are [i]nartfully written and ambiguous, the provision regarding rent is clear. The J&R Option clearly provides for "$3,300 rent a month" with "$1150 of monthly rent goes towards the $465,000 of building cost (at the end of 6 years this will accrue to $82,800)." This agreement is further established under the Lease Purchase Option, under which Appellants had an obligation to provide Appellee with $39,600 annually for rent for a period of six years, equating to a monthly rental obligation of $3,300. Provided [that] rent was paid in full each month, $1,150 from each month's rent[,] beginning January 2010 through the execution of the option to purchase[,] would be applied to the purchase price. If Appellants default[ed] on their obligations, Appellee had the right to terminate the option to purchase by giving written notice of the termination. If terminated, Appellants would lose entitlement to any refund of rent or option.

Appellants assert that they []would have become owners of the [P]roperty but for Appellee's wrongful failure to complete the sale and despite Appellants continuing to pay the prior effective rent of $2,150.00.[] Appellants, however, asserted their intent to purchase the Property after Appellee filed his Complaint claiming breach of contract and asserting his right to terminate the agreement. It is uncontroverted that the sale of the [P]roperty was never consummated and that after the expiration of the six-year lease period, Appellants unilaterally reduced the rental amount by $1,150. There were no provisions in any of the agreements which provided for the increase or decrease in rent.

When a lease for [a] term of years expires, and lessee remains in possession, landlord may, at its option, treat lessee as [a] hold-over tenant, which implies that possession of hold-over is subject to same terms, conditions, and covenants as [the] old lease. ***Clairton Corp. v. Geo-Con, Inc.***, 635 A.2d 1058[, 1059] (Pa. Super. 1993). Though Appellee, as owner of the [P]roperty, may have been entitled to change the rent after the lease expired, he failed to present evidence of such to the trial court. The trial court concluded that the monthly rent is $3,300. Thus, Appellee

is owed back rent in the amount of $1,150 per month since the expiration of the initial six-year lease term.

Trial Court Opinion, 7/26/19, at 7-9 (citations to record omitted).  As the trial court's rationale is supported by the record and the law, and we agree with its determination, we affirm on this basis in rejecting Appellants' final issue.  ***See id.***

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/5/20